IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD LOMBARD,

          Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

          Defendant.
_____

Civ. No. 6:13-cv-01530-MC


OPINION AND ORDER


MCSHANE, Judge:

     Plaintiff Ronald Lombard brings this action for judicial review of the Commissioner's

final administrative decision denying his application for disability benefits and supplemental

security income under the Social Security Act. This court has jurisdiction pursuant to 42 U.S.C.

§ 1383(c) and 405(g).  Because the Commissioner's decision is based on proper legal standards

and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

     Plaintiff protectively filed his claims for SSDIB and SSI on March 16, 2010. (Tr 21).

Plaintiff alleged he became disabled on September 11, 2009. *Id.* Plaintiff turned 50 on October

17, 2009 (Tr. 179) and had worked as a nursing assistant for 30 years. [#21 at p.8].  His claims

were twice denied administratively and he timely requested a hearing.  A hearing was held on

1 – OPINION AND ORDER

November 15, 2011 (Tr. 179) at which time Administrative Law Judge (ALJ) denied the Plaintiff's claims. The Appeals Council denied Plaintiff's request for review on June 25, 2013, making the ALJ's decision the final agency decision. (Tr. 1). Plaintiff timely requested judicial review through this appeal.

Plaintiff's reported impairments include degenerative disc disease of the cervical spine, degenerative joint disease of the right knee, a bilateral flat-foot deformity, and a mental health impairment. Plaintiff argues the ALJ erred by failing to account for the Plaintiff's mental health impairment, improperly rejecting the opinion of the Plaintiff's treating podiatrist, improperly finding plaintiff less-than credible, and failing to identify transferable skills in the RFC.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 and 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his or her burden

with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. Here, the Commissioner's final decision is based on proper legal standards and supported by substantial evidence. I address each of Plaintiff's arguments in turn.

**I.      The ALJ's Adverse Credibility Determination**

Where, as here, the plaintiff has presented objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms she has testified to, the ALJ can only reject that testimony by giving "specific, clear and convincing reasons" for his rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir.2007). However, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)).

The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter*, 504 F.3d at 1040.

The ALJ provided numerous reasons supporting his finding that Plaintiff was less-than-credible. For example, the ALJ found Plaintiff's history of treatment and medications were not

3 – OPINION AND ORDER

consistent with Plaintiff's alleged levels of debilitating pain. Tr 26. For all of his ailments, Plaintiff here received only conservative treatments, which the ALJ may point to in discounting allegations of severe pain. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Additionally, the ALJ correctly noted that on occasion, Plaintiff failed to follow up with the recommended treatment plan. As discussed by the ALJ, Dr. Greenberg instructed Plaintiff to "report by phone to me any difficulties" with a new ankle orthosis and to return for a follow up in three weeks. Tr 28; 331. There is no record of Plaintiff reporting any difficulties or following up with Dr. Greenberg. At the time of the hearing before the ALJ, Plaintiff was not undergoing any treatment, even conservative treatment, for his back and neck pain.

The ALJ also noted that Plaintiff's last job ended not because of Plaintiff's disabling pain, but because Plaintiff was terminated over alleged patient neglect. Tr 28. This is a valid reason an ALJ may rely on in finding a Plaintiff less-than credible. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Finally, the ALJ noted Plaintiff's allegations of disabling pain were inconsistent with Plaintiff's activities of daily living. TR 27. Plaintiff alleges disability as of September 11, 2009. Tr 21. Two weeks after the alleged onset of disability, Plaintiff reported exercising three times per week, walking 30-60 minutes at a time. Tr 27; 284. In fact, Plaintiff reported he recently lost weight due to eating better and "more exercise." Tr 284. Six months later, Plaintiff reported spending his time "doing some reading, watching TV, and taking walks." Tr 300.

All of the above findings referenced by the ALJ are specific and legitimate reasons, supported by the record, in finding Plaintiff less-than credible.

## II.        Plaintiff's Mental Health Diagnoses

The Plaintiff claims that the ALJ erred at step two by failing to find his mental health impairments severe. The Plaintiff argues this was in error because "the record is replete with the diagnosis of depression and evidence of the functional impairment it imposes. (Tr 374, 376, 384, 386, 388)." Pl.'s Br., 6. Specifically, the Plaintiff references two global assessments of functioning (GAF); one administered by Marriage & Family Therapist Noelle Osborn wherein plaintiff was given a GAF score of 50 (Tr 388), and another administered by Licensed Clinical Social Worker Deborah Jackson wherein plaintiff was given a GAF score of 54 (Tr 374).

The ALJ provided a germane reason in rejecting the opinion of Licensed Clinical Social Worker Deborah Jackson. As Jackson is an "other source," the ALJ need only provide a germane reason for rejecting her opinion. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ noted Jackson's opinion was inconsistent with the opinion of Dr. Belcherm Ph.D. Tr 29. Dr. Belcherm, a Licensed Psychologist, assessed Plaintiff a GAF of 65. Tr 303. Additionally, Dr. Belcherm opined:

> Anti-depressant medication appears to have relieved the depression. Neither the depressed mood nor the anxiety should prevent him from working. Rather, being employed again would seem to be beneficial for relieving his symptoms.

Tr 302. Dr. Belcherm's opinion clearly differs from Jackson's opinion. It is the ALJ's job to weigh conflicting evidence. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Dr. Belcherm is an "acceptable medical source." 20 C.F.R. §§ 404.1513(a); 416.913(a). As an opinion from an "acceptable medical source" is generally entitled to more weight than that of an "other source," the ALJ provided a germane reason for rejecting Jackson's opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

Additionally, the ALJ noted Jackson's opinion appeared to stem largely from Plaintiff's self-reporting. Tr 29. As the ALJ properly found Plaintiff's reports of pain less-than credible, this is an additional germane reason for rejecting Jackson's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Following the ALJ's decision, Plaintiff submitted Ms. Osborne's opinion to the Appeals Council. Like Ms. Jackson, Ms. Osborne, a Marriage & Family Therapist, qualifies as an "other source." Ms. Osborn assigned Plaintiff a GAF of 50 and resembles Ms. Jackson's opinion. Tr 388. Even though the ALJ never reviewed Ms. Osborne's opinion, this evidence is part of the administrative record before me. *Brewes v. Comm'r for Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). Ms. Osborn's opinion, therefore, must be considered in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.*

For the same reasons discussed with regard to Ms. Jackson's opinion above, Ms. Osborn's opinion does not undermine the ALJ's conclusion in this instance. Ms. Osborn's opinion, like that of Ms. Jackson, is contradicted by an acceptable medical source. Additionally, Ms. Osborn's opinion relies heavily on Plaintiff's self-reporting, which the ALJ properly determined was less-than credible.

In short, as discussed above, the ALJ's finding that Plaintiff did not have a severe mental impairment was supported by substantial evidence in the record. The ALJ presented the evidence of mental impairments in some detail. Tr 24-25. The ALJ accorded significant weight to the opinions of the reviewing psychological consultants, Tr 25, and that of Dr. Belcher, Tr 24. The ALJ walked through the "paragraph B" criteria when evaluating mental disorders. Tr 24. The finding that Plaintiff's mental impairments were not severe is supported by the record and free of legal error.

III.      **Dr. Greenberg's Opinion**

At step four, the ALJ found Plaintiff capable of "light work." Light work would require the Plaintiff to be on his feet for up to six hours of an eight-hour workday, five days per week. Tr 25. The Plaintiff argues that this assessment is in error because the Plaintiff's physical condition is such that he can only be on his feet for a maximum of two hours per work day. This two-hour estimation is based on the opinion of Plaintiff's treating physician Dr. David Greenberg, a podiatrist (DPM) who examined and treated Plaintiff for his feet and ankle impairments on three occasions from June to August, 2011. Tr 331-334.

To reject an un-contradicted opinion of a treating physician, the ALJ must present clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); 20 C.F.R. § 404.1527(c)(2). Regarding Dr. Greenberg's opinion, the ALJ stated:

> Dr. Greenberg completed a form dated October 6, 2011 , at the request of the claimant's attorney indicating that the claimant has pain with standing or walking. He opined that the claimant is limited to sedentary work with standing and/or walking limited to two hours of an eight-hour workday. However, little weight is given to Dr. Greenberg's opinion because he treated the claimant on only three occasions during the period June 29, 2011, to August 10, 2011, and he reported he was unaware of the claimant's response to left foot/ankle orthosis which was expected to result in greater functioning with less pain. Although Dr. Greenberg opined that the claimant would need unscheduled breaks during the workday, he indicated that the claimant would need breaks every two hours, suggesting that this could be accommodated by regular breaks and lunch periods. His opinion that the claimant would miss about two days of work per month is given no weight because it is purely speculative.

Tr 29. Considering the record as a whole, these are adequate reasons for assigning little weight to Dr. Greenberg's opinion.

As noted by the Commissioner, Plaintiff reported experiencing ankle pain and swelling during a May 17, 2011 appointment. Tr 355. Plaintiff reported pain from two weeks prior to that appointment. Tr 355. Nina O'Mailia, PA-C referred Plaintiff to Dr. Greenberg, a podiatrist. TR 333. Dr. Greenberg first treated Plaintiff on June 29, 2011. Tr 333. Dr. Greenberg noted Plaintiff "is an excellent candidate for an attempt at management of his left foot symptoms with use of a properly designed custom ankle foot orthosis." Tr 333. During the second visit, on July 20, 2011, Dr. Greenberg "Suggested again the use of the ankle foot orthosis properly designed for his condition." Tr 332. One month later, during Plaintiff's third and final visit with Dr. Greenberg, Plaintiff received the ankle orthosis. Tr 331. Dr. Greenberg observed that Plaintiff "was able to ambulate with the [ankle orthosis] and shoe with relative comfort and with no apparent difficulties." Tr 331. As discussed above, Dr. Greenberg ordered a follow up appointment in three weeks, directing Plaintiff to "report by phone to me any difficulties" with the orthosis.

Plaintiff never followed up with Dr. Greenberg. The ALJ properly noted that because of Plaintiff's failure to floow up, and the fact that the orthosis appeared to address Plaintiff's foot problems, Dr. Greenberg's opinion that Plaintiff could stand only two hours per workday was entitled to little weight. Tr. 29. The ALJ simply accorded more weight to the opinions of the reviewing physicians who, after reviewing all the medical evidence, opined that Plaintiff could stand six hours per workday. Tr 28. Considering Dr. Greenberg treated Plaintiff on three occasions during a small time period, the ALJ properly concluded Dr. Greenberg's opinion was not entitled to great weight as to whether Plaintiff would experience foot trouble over a larger portion of time necessary to find Plaintiff disabled under the regulations.

Additionally, considering Plaintiff never followed up as directed, and considering the orthosis appeared to correct the problems, the ALJ was entitled to dismiss as "speculative" Dr. Greenberg's opinion that Plaintiff would miss two days of work per month due to foot problems.

As noted, the ALJ is charged with resolving conflicts in the record. Here, there was a conflict over whether Plaintiff could stand for two hours per workday as opined by Dr. Greenberg, or six hours per workday as opined by several other sources. The ALJ committed no error in resolving the conflicts, and his conclusion, as stated in Plaintiff's RFC assessment, is supported by substantial evidence in the record. Further, the ALJ provided clear and convincing reasons for rejecting Dr. Greenberg's opinion that Plaintiff would miss two days of work per month.

## IV.    Transferrable Skills

The Plaintiff argues that the ALJ's initial RFC was flawed because it only identified "traits" rather than actual transferable "skills." The Commissioner admits that "It may be true that some of the skills identified by vocational expert and the ALJ may best be characterized as either traits or work activities rather than skills," Resp., 17, but argues that the FRC was nonetheless not flawed because "it was evident that the VE was analyzing the traits, skills, and activities in the context of Plaintiff's 30 years of nurse assistant work…" and that "The line between skills, traits, and work activities can be difficult to divine." Resp., 16-17.

The court agrees with the Commissioner on this point. While generalized traits alone cannot form the basis of the ALJ's analysis in step five, the mere fact that traits and work activities are included in the analysis do not render the opinion unfounded. It is clear from the record that both the VE and the ALJ evaluated the Plaintiff's skill set level in the context of the Plaintiff's 30 year career in patient care as certified nurse assistant. The work skill from past

relevant work was appropriately identified by the ALJ as semi-skilled. The ALJ properly identified a number of work traits and skills that the Plaintiff was capable of performing under the general skill set of patient care: "attending to the needs of a specific individual or group; following oral and written instructions; using eyes, hands, and fingers to handle equipment and instruments and collect medical data; and adapting to emergencies and frequent changes in job duties." Tr 30.

## **CONCLUSION**

The Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 31st day of March, 2015.

_____/s/ Michael J. McShane_____
Michael J. McShane
United States District Judge